

# FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. SECTION 1983

In the United States District
Court for the Northern District
of New York

JUDGE McAVOY

MAGISTRATE JUDGE DiBIANCO

*WILLIAM BLAKE, JR.*

Enter above the full name of the
plaintiff in this action.

VS.

U. S. DISTRICT COURT
N. D. OF N. Y.
**FILED**

OCT 2 1 1992

AT _____ O'CLOCK ___ A. M.
GEORGE A. RAY, Clerk
UTICA

$9.50
*FILED*

*COMPLAINT*

Enter above the full name of the
defendant or defendants in this action.

**92-CV-1351**

## I. Parties

(In item A below, place your full name in the first blank and place your present address in the second blank. Do the same for any additional plaintiffs.)

A. Name of Plaintiff _____

Current Address _____ *SEE COMPLAINT*

_____

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the same information regarding any additional defendants.)

B. Defendant _____ is

employed as _____ *SEE COMPLAINT*

at _____

C. Additional Defendants _____

_____

_____

**II. Statement of Claim**

State here as briefly as possible the *facts* of your case. Describe how each defendant is involved. Also include the names of any other persons involved, dates and places of events. You may cite Constitutional Amendments you alleged were violated, but do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. (Attach additional sheet if necessary).

*SEE COMPLAINT*

**III. Relief**

*Briefly state exactly what you want the court to do for you. (Make no legal arguments. Do not cite cases or statutes.)*

*SEE COMPLAINT*

( ✗ ) Jury Trial        (   ) Non-Jury Trial

**IV. Place of Present Confinement** ___CHAWANGUNK  PRISON___

A. Is there a prisoner grievance procedure in this Institution?    ( ✓ ) Yes      No (   )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes (   )      No ( ✓ )

C. If your answer is YES:

   1. What steps did you take? _____

2. What was the result? ___ _____   _____

_____

D. If your answer is NO, explain why not _*IT WOULD BE FUTILE*_

_____

E. If there is no prison grievance procedure in the institution, did you complain to the prison authorities? YES ( ✓ )    NO ( )

F. If your answer is YES:

1. What steps did you take? _____

_____

2. What was the result? _____

_____

## V. Previous Lawsuits

A. Have you ever begun other lawsuits in any state or federal court relating to your imprisonment? YES ( ✓ )    NO ( )

B. If your answer to A is YES: You must describe any lawsuits, currently pending or closed, in the space below. (If there is more than one lawsuit, you must describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to previous lawsuit:    *(SEE REVERSE)*

Plaintiff(s) *WILLIAM BLAKE, JR.*

_____

Defendants *DEPUTIES TERRY BASE, JEFF DOMAKOWSKI, EARL SMITH, OTHER UNKNOWN POLICE OFFICERS*

2. Court (if federal court, name the District; if state court, name the county):

*NORTHERN*

3. Docket number: *90-CV-8*

4. Name of Judge to whom case was assigned *NEAL P. McCURN*

5. Disposition (was the case dismissed? appealed? still pending?)

*PENDING*

6. Approximate date of filing lawsuit *1990*

7. Approximate date of disposition _____

I declare under penalty of perjury that the foregoing is true and correct.

*10-1-92*
(Date)

*William Blake, Jr.*
(Signature of Plaintiff)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
------------------------------------------

WILLIAM BLAKE, JR.,

                           Plaintiff,

     -vs-

THOMAS A. COUGHLIN, III, Commissioner
of the Department of Correctional
Services;  DONALD SELSKY, Director of
Special Housing and Inmate Discipline;
LOUIS F. MANN, Warden of Shawangunk
Prison;  PAUL LEVINE, Deputy Warden for
Inmate Programming;  ROBERT CUNNINGHAM,
Senior Counselor;  ALLEN BLADES,
Corrections Lieutenant;  THOMAS MANNOIA,
Corrections Counselor;  G. SKROKI,
Corrections Sergeant;  EDWARD RUDDER,
Prison Psychologist;  Other Unknown
Corrections Employees,

                       Defendants.

------------------------------------------

**CIVIL RIGHTS COMPLAINT**

**WITH A JURY DEMAND**


Civil No. **92-CV-1351**

1.  This is a §1983 action filed by William Blake, Jr., a state prisoner, alleging violations of his constitutional rights and seeking monetary damages, declatory judgment and injunctive relief.  The plaintiff requests a trial by jury.


## Jurisdiction


2.  This is a civil rights action under 42 U.S.C. §1983.  This Court has jurisdiction under 28 U.S.C. §1343.  Plaintiff also invokes the pendent jurisdiction of this Court.


## Parties


3.  Plaintiff William Blake, Jr. is a prisoner presently incarcerated at Shawangunk Prison in Wallkill, New York.

Page 2

4.   Defendant Thomas A. Coughlin, III is the Commissioner of
the Department of Correctional Services and as such is responsible
for the overall operation and management of New York State's prison
system.   He is employed at Corrections' headquarters in Albany, New
York.

5.   Defendant Donald Selsky is Director of Special Housing and
Inmate Discipline and as such oversees the operation and supervision
of the Special Housing Units in New York State's various prisons and
is responsible for the overseeing of the disciplinary programs in
those same prisons.   He is employed at Corrections' headquarters.

6.   Defendant Louis F. Mann is the Warden of Shawangunk Prison
and as such is responsible for the direct operation and management
of that prison.

7.   Defendant Paul Levine is Deputy Warden for Inmate Programming
at Shawangunk Prison and as such is responsible for the running of
all programs within the facility.   Defendant Levine acted as hearing
officer in plaintiff's Administrative Segregation hearing.

8.   Defendant Robert Cunningham is Senior Corrections' Counselor
at Shawangunk Prison.   He is also the Chairman of The Monthly Review
Committee that allegedly reviews plaintiff's Administrative Segregation
status each month.

Page 3

9.   Defendant Allen Blades is a Corrections Lieutenant employed at Shawangunk Prison.  He is also a member of The Monthly Review Committee that allegedly reviews plaintiff's Administrative Segregation status each month.

10.   Defendant Thomas Mannoia is a Corrections Counselor working at Shawangunk Prison.  He acted as plaintiff's Employee Assistant during plaintiff's Administrative Segregation hearing.

11.   Defendant G. Skroki is a Corrections Sergeant formerly employed at Shawangunk Prison.  Defendant Skroki once was the sergeant in charge of the Special Housing Unit at Shawangunk Prison and was also a member of The Monthly Review Committee that was allegedly reviewing plaintiff's Administrative Segregation status each month.

12.   Defendant Edward Rudder is a psychologist working at Shawangunk Prison.  Defendant Rudder works regularly in the Special Housing Unit and was and may still be a member of The Monthly Review Committee that allegedly reviews plaintiff's Administrative Segregation status every month.

13.   The Unknown Corrections Employees named as defendants in this case were all at one time during the period beginning November 14, 1989 until the present members of The Monthly Review Committee that is charged with the reviewing of plaintiff's Administrative Segregation status each month.  Their names are unknown to plaintiff at this time.

Page 4

14.  Plaintiff is suing each and every one of the above-named defendants in their individual and official capacities.

15.  Each defendant acted under color of state law at all times relevant to this complaint.

## Facts and History

16.  Plaintiff, William Blake, Jr., entered the New York State Prison System on July 10, 1987.

17.  Immediately upon his entry into the state's prison system plaintiff was placed in the Special Housing Unit (SHU) at Shawangunk Prison (Shawangunk) in Involuntary Protective Custody (IPC) status pending a hearing to determine the need for IPC placement and continuance.

18.  Plaintiff's original confinement to SHU was ordered by defendant Thomas A. Coughlin, III, Commissioner of the Department of Correctional Services (DOCS).

19.  On July 17, 1987 plaintiff was served with a recommendation for IPC placement.  The recommendation was written by Lieutenant Rivenburgh.

20.  On July 22, 1987 a hearing was held and the recommendation to place plaintiff in IPC status was affirmed.

Page 5

21.  On September 23, 1987 plaintiff administratively appealed this disposition on the grounds that IPC was not the proper mechanism and that there lacked substantial evidence to warrant plaintiff's continued confinement to SHU in IPC status.

22.  On October 13, 1987 the IPC hearing was administratively reversed for "lack of substantial evidence" and a rehearing was ordered.  Plaintiff remained in SHU while awaiting the new hearing.

23.  On October 22, 1987 plaintiff was again served with a recommendation for IPC placement.  This recommendation was nearly identical to the first and was again written by Lieutenant Rivenburgh.

24.  On October 27, 1987 the rehearing was held and again the recommendation to place plaintiff in IPC status was affirmed.

25.  On November 6, 1987 plaintiff again administratively appealed the disposition leading to his confinement to SHU in IPC status.

26.  On December 16, 1987 the administrative appeal was denied.

27.  Plaintiff was confined to SHU at Shawangunk under IPC status from July 10, 1987 until May 18, 1989.

28.  On May 18, 1989 plaintiff received a Misbehavior Report which resulted in his receiving six months disciplinary confinement to SHU (which was to end November 14, 1989), and hence his status

Page 6

was changed from IPC to SHU disciplinary confinement.

29.  On November 13, 1989 (one day before his disciplinary confinement was to end) plaintiff was served with a recommendation for Administrative Segregation (Ad Seg) status placement by Lieutenant Degaust.  The Ad Seg recommendation had also been written by the same Lieutenant Degaust.

30.  The Ad Seg recommendation that plaintiff received was identical in substance to the two IPC recommendations that plaintiff had previously received and which led to his ongoing confinement to SHU.

31.  Prisoners that are held in Ad Seg status are confined to SHU like prisoners being held in IPC status, but Ad Seg is much harsher in that IPC prisoners are allowed most of the in-cell privileges that prisoners in the general prisoner population receive (though they [IPC prisoners] are kept locked in their cells for 21 hours per day), whereas in Ad Seg the prisoner is held in a situation identical to that of SHU disciplinary confinement prisoners:  no personal property is allowed in the prisoner's cell; he has no phone privileges; he has no package privileges; he has no commissary privileges; he is allowed to participate in no programming whatsoever; he is not allowed to attend any religious worship or religious education classes; he is allowed only one visit per week, which he receives in the SHU visiting room where he is separated from his visitor(s) by a plexiglass partition; and he is allowed out of his cell for only one hour per

Page 7

day during which time he is given what is misleadingly called
"recreation."  This "recreation" being when the prisoner is allowed
out of his ten-foot long cell and placed into a thirty-foot long SHU
recreation yard that is totally devoid of recreational facilities
and supplies--there is only air there.

32.  Ad Seg provides prison officials with the means of placing
a prisoner who has violated no facility rule or regulation in the
exact same housing unit as those prisoners who have been found guilty
of severe violation of the disciplinary code, subject him to the same
treatment, punish him in the same manner, give him no release date,
and at the same time claim that Ad Seg is not being used for punitive
purposes but is merely a security measure that must be taken to insure
the orderly running of the prison.  Ad Seg and SHU disciplinary
confinement are substantively identical.

33.  On November 20, 1989 a hearing was commenced to allegedly
determine the need for plaintiff's Ad Seg placement.  Defendant Paul
Levine acted as hearing officer.

34.  On November 29, 1989 the Ad Seg recommendation was affirmed.

35.  On December 1, 1989 plaintiff administratively appealed
the determination of defendant Levine affirming the Ad Seg
recommendation.

Page 8

36. On February 5, 1990 defendant Donald Selsky denied plaintiff's appeal and affirmed the Ad Seg hearing.

37. At present plaintiff has been held in the SHU of Shawangunk Prison for over five years. All but the six months plaintiff spent in SHU disciplinary confinement from May 18, 1989 until November 14, 1989 and the 90 days SHU disciplinary confinement plaintiff is presently serving (beginning July 26, 1992 and ending October 24, 1992) have been spent in either IPC or Ad Seg statuses.

38. IPC and Ad Seg are both forms of administrative lock-down, not disciplinary confinement.

39. During the time plaintiff spent in IPC status he was allegedly receiving a monthly review of his status to determine the need for its continuance. None of those reviews ever produced a recommendation that plaintiff be released from SHU confinement though no new evidence was ever given to support his continued need for SHU confinement.

40. During the time plaintiff has been held in Ad Seg status he has allegedly been given a monthly review of his status to determine the need for its continuance. Though no new evidence has been produced at any of these review hearings to support plaintiff's continued need for SHU confinement, none of these reviews has led to plaintiff's release from SHU.

Page 9

41.  Both IPC recommendations and the Ad Seg recommendation
alleged that plaintiff was in need of administrative lock-down because
of the nature of his crime (the killing of one police officer and
the wounding of another during an escape attempt) and alleged
statements that plaintiff made threatening escape.  Each and every
one of the alleged acts that has led to plaintiff's ongoing confinement
to SHU in one form of administrative lock-down or another occurred
before plaintiff's state incarceration began on July 10, 1987.

42.  Plaintiff receives no notice of the decision of The Monthly
Review Committee that allegedly reviews his Ad Seg status each month,
nor did he ever receive any notice of the determinations of The Monthly
Review Committee that allegedly reviewed his IPC status.

43.  Plaintiff does not receive notice of when the review will
take place, he has no right to introduce any evidence at these reviews,
he has no right to be present during the review, he receives no notice
of the determination, and for all intent and purpose he does not know
that they take place at all.

## CLAIMS

## First Cause of Action

44.  The actions of each of the named defendants has led to the
denial of plaintiff's rights to due process and equal protection of
the law as guaranteed by the 5th and 14th amendments to the United

<u>Page 10</u>

States Constitution.

45.    Immediately upon his entry into the New York State Prison
System on July 10, 1987, upon the orders of defendant Coughlin,
plaintiff was placed in the SHU of SHawangunk in IPC status and skipped
the normal reception process that newly-arrived prisoners must
complete.

46.    The two IPC hearings that plaintiff received to allegedly
determine the need for plaintiff's continued confinement to SHU were
a farce from their start because the outcome of those hearings had
been determined long before they even commenced.  The orders of
defendant Coughlin were handed down to defendant Mann, and from
defendant Mann to the hearing officer that would be giving plaintiff
his IPC hearing.  Those orders that originated in the Commissioner's
office were that plaintiff was to be locked down in SHU under any
and all circumstances, regardless of the legality of it, and that
he was not to be released from that confinement.  Nothing plaintiff
did or said at his two IPC hearings would have changed their outcome.
Both hearing were held to give an outer appearance of due process
but in fact were total shams and violated plaintiff's constitutional
rights to due process and equal protection of the law.

47.    The circumstances leading to plaintiff's confinement to
Ad Seg were the same as those that led to his confinement to IPC.
No longer was defendant Coughlin satisfied with plaintiff being locked
down in SHU under the already harsh conditions of IPC, now he wanted

Page 11

to strip plaintiff of even the few privileges that he had remaining-
-and so plaintiff was served with a recommendation for Ad Seg
confinement.

48.  Though Lt. Degaust wrote plaintiff's Ad Seg recommendation,
it was ascertained during plaintiff's Ad Seg hearing that he had been
ordered to do so by defendant Mann.

49.  Though Lt. Degaust claimed to have reviewed plaintiff's
files, he could not answer even simple questions about plaintiff and
plaintiff's situation:  He did not know how long plaintiff had been
confined to SHU and he knew very little about plaintiff's prior IPC
confinement.  Though he avoided directly saying that he was ordered
to write plaintiff's Ad Seg recommendation when first asked about
it, he finally had nothing left to do but to admit that he was ordered
to write plaintiff's Ad Seg recommendation by defendant Mann.

50.  The order leading to plaintiff's recommendation and continued
confinement to Ad Seg status originated with defendant Coughlin, was
passed along to defendant Mann, and he passed it to Lt. Degaust so
that the Ad Seg recommendation would be written and then to defendant
Levine to insure that the outcome of plaintiff's hearing was to the
satisfaction of the Commissioner.

51.  Defendant Commissioner Coughlin issued the orders that led
to plaintiff's long and painful confinement to SHU and that denied
plaintiff his constitutional rights to due process and equal protection

<u>Page 12</u>

of the law and subjected him to cruel and unusual punishment.

52.   Defendant Levine, following the orders given to him by defendant Mann, denied plaintiff a fair and impartail hearing, denied plaintiff his constitutional right to call witnesses on his behalf, and participated in a conspiracy that led to plaintiff's cruel and unusual treatment.

53.   At plaintiff's Ad Seg hearing defendant Levine denied plaintiff his right to call as witnesses Assistant Attorney General Martin Hotvet, defendant Commissioner Coughlin, Sgt. Walhrab and prisoner Carl Macedonia.  Each witness was vital to plaintiff's defense that he was being unfairly singled out for abuse, that his continued confinement was not necessary and was in fact a violation of plaintiff's constitutional rights.  However, defendant Levine could not be expected to allow plaintiff the opportunity to make any such showing at his hearing, for he was a player in the conspiracy.

54.   Plaintiff's Ad Seg hearing was no more than a perfunctory performance put on to create the illusion of due process of law--but the fact remains that it was a total sham.

55.   Plaintiff chose defendant Mannoia as his employee assistant prior to the start of his Ad Seg hearing.  Plaintiff requested that defendant Mannoia obtain certain statistical data that is maintained by DOCS.  Upon defendant Mannoia's taking plaintiff's requests, he reported them to defendant Mann.  Defendant Mann then ordered defendant

Page 13

Mannoia to deny each and every one of plaintiff's requests.  Defendant
Mannoia followed defendant Mann's orders and did not fulfill any of
plaintiff's requests.

56.  Defendant Mannoia denied plaintiff his right to adequate
employee assistance and inhibited him in preparing his defense against
the Ad Seg recommendation, in violation of the 5th and 14th amendments
to the United States Constitution.

57.  At plaintiff's Ad Seg hearing defendant Mann admitted that
he had ordered defendant Mannoia to deny plaintiff's requests for
the statistical data that he wanted to use to make a showing that
he was being singled out for punishment and was not being treated
equally to other prisoners in New York State.  Defendant Mann claimed
that he had determined that plaintiff's requests were not relevant
to the AD Seg hearing.  Plaintiff objected saying that defendant Mann
had no right to make any decisions as to what was or was not relevant
to plaintiff's hearing because he was not the hearing officer.

58.  Defendant Mann violated plaintiff's due process rights by
interfering with plaintiff's hearing and causing him to be deprived
of adequate employee assistance.

59.  Defendant Selsky received plaintiff's appeal of his Ad Seg
hearing but failed to reverse the hearing though it was clearly held
in violation of DOCS' own rules and regulations and constitutional
law.  Because plaintiff's confinement was being ordered by the very

Page 14

head of the entire DOCS, he could not expect to receive any justice
by appealing to a Corrections' employee.  It appears that more than
any of the defendants care about the law or right and wrong, they
care about keeping their jobs and staying on good terms with their
top boss (defendant Coughlin) in Albany.

60.  The original orders of defendant Coughlin to place plaintiff
in SHU though plaintiff had violated no prison rules or regulations
began a conspiracy that would involve untold Corrections' employees
and would lead to plaintiff remaining in segregated confinement for
more than five years.  The conspiracy that defendant Coughlin began
and each defendant has participated in continues till this day--so
many years after it began.

61.  Plaintiff is allegedly receiving a review of his Ad Seg
status each month, like he allegedly received a monthly review of
his IPC status over the course of the 22-plus months that he spent
in IPC.

62.  Plaintiff has reason to believe that certain members of
The Monthly Review Committee have recommended his release from SHU
confinement, but these recommendations have never been acted upon
nor were they to plaintiff's knowledge ever recorded.  Defendant
Cunningham is the Chairman of The Monthly Review Committee and would
write and submit any paperwork generated by The Review Committee to
the Superintendent of Shawangunk, defendant Mann.  Because defendant
Cunningham is following the orders given to him by defendant Mann

Page 15

to keep plaintiff confined to SHU, the monthly review of plaintiff's
Ad Seg status is no more than a joke. Plaintiff's status is rubber-
stamped each month during the periodic review of his status so that
he is actually receiving no review at all.

63. Plaintiff has been informed that at least two Review
Committee members have recommended his release from confinement, but
still plaintiff's confinement continues. He has no release date;
he does not know what he must do to earn his release, or even if he
can do anything to indeed earn his release; his behavior does not
seem to be having any effect on his confinement or on the consciences
of those that are causing it to continue; and in the final plaintiff's
confinement or release from SHU depends solely upon the arbitrary
and capricious decision of the one who has caused plaintiff's five
year lock-down, defendant Couhglin.

64. The monthly review of plaintiff's Ad Seg status is
meaningless and his confinement to SHU in that same status is
indefinite, in violation of his constitutional rights to due process
and equal protection of the law, and in violation of clearly
established constitutional laws.

## Second Cause of Action

65. Plaintiff's five year-plus confinement to SHU in Ad Seg
status has caused and is causing him to endure cruel and unusual
punishment in violation of the 8th amendment to the United States

Page 16

Constitution.

66.  Plaintiff has now been confined to SHU for over five years in one form of administrative confinement or another.  During that period he has not been allowed to participate in any educational programs, he has not been allowed to participate in any religious worship or religious education classes, he has not been given the opportunity to participate in any recreational activities beyond those that he can get in the empty SHU yard that he is allowed into for one hour a day, he has been deprived of every privilege that a prisoner can be deprived of (to the point where he cannot possess even his personal undershorts and socks), and through it all he has been caused to suffer like few human beings will ever know.

67.  Though plaintiff has been commended for his good behavior again and again by even some of the defendants in this case, he is confined with prisoners that have been described as some of the most severe disciplinary problems in all of New York State.  In the five-plus years of plaintiff's SHU confinement he has received but two Misbehavior Reports that have led to his receiving disciplinary cell confinement time.  Once in November of 1989 and once again in August of 1992.  Outside of those two incidents plaintiff has not received even a single day's worth of disciplinary cell confinement.  Still he is housed amongst some of the worst disciplinary cases in New York State and has not a single privilege more than they.  Indeed, the prisoners serving disciplinary time in SHU are better off than plaintiff is.  Each one of them has been found guilty of violating

Page 17

a specific prison rule or regulation and has been given a release date so that they know when they can expect to leave SHU--providing that they have no further trouble.  Plaintiff has no release date and knows not when he will be liberated from the confines and harsh conditions of SHU.  He also does not know what he can do to help facilitate his release into the general prison population.  He cannot participate in any kind of programming, and his good behavior has done nothing to secure his release from confinement.  Plaintiff is serving multiple life sentences and lives each day wondering if the days he has remaining in this world will be spent in a small SHU cell.

68.  The length of time plaintiff has spent in SHU, the reasons that he has spent that amount of time in SHU, the conditions he has had to endure and the suffering it has caused has led to the plaintiff's subjection to cruel and unusual punishment.

69.  Each and every one of the named defendants has participated in a conspiracy that has led to plaintiff's 8th amendment rights being violated.

## Relief

WHEREFORE, plaintiff requests that this Court grant the following relief:

A.  Issue a declatory judgment that the defendants violated the United States Constitution when:

Page 18

1)   Defendant Coughlin ordered plaintiff's confinement to SHU in IPC status and rendered any subsequent IPC hearings a sham by virtue of the fact that his orders were being handed down from Corrections' employee to Corrections' employee and were being followed irrespective of their legality or lack of the same;

2)   By the orders of defendant Coughlin plaintiff was placed in the harsher Administrative Segregation status under the same pretenses that were used to place him in Involuntary Protective Custody status;

3)   IPC and Ad Seg statuses were used for punitive purpose to punish plaintiff though he had violated no prison rule or regulation to warrant it;

4)   Defendant Levine failed to give plaintiff a fair and impartial due process Ad Seg hearing and denied him four of his requested witnesses;

5)   Defendant Mannoia failed to provide plaintiff with adequate employee assistance;

6)   Defendant Mann interfered with plaintiff's Ad Seg hearing by ordering defendant Mannoia to deny plaintiff's requests for assistance;

7)   Defendant Mann relayed the orders of defendant Coughlin to hold plaintiff in IPC and Ad Seg statuses so that the outcome of the three administrative hearings (two IPC and one Ad Seg) that plaintiff received had been determined before they even began;

8)   Defendant Selsky failed to overturn plaintiff's second IPC hearing though it violated plaintiff's due process rights;

Page 19

9) Defendant Selsky failed to overturn plaintiff's Ad Seg hearing when that hearing was replete with violations of DOCS' own rules and regulations and plaintiff's constitutional rights;

10) Defendant Cunningham conspired with defendants Mann and Coughlin to deprive plaintiff of a meaningful monthly review of his Ad Seg status;

11) Defendant Cunningham failed to make note of the recommendations of Review Committee members when they recommended plaintiff's release from confinement;

12) Defendants Blades, Rudder and Skroki failed to perform their duties as members of The Monthly Review Committee and give plaintiff a meaningful monthly review of his Ad Seg status;

13) Each defendant participated in an ongoing conspiracy (that began in defendant Coughlin's office on July 10, 1987 and continues to the present) to indefinitely confine plaintiff to SHU in various forms of administrative lock-down and deprive him of his constitutionally guaranteed rights to due process and equal protection of the law and cause him to be subjected to cruel and unusual punishment.

B. Issue an injunction ordering that the defendants or their agents immediately release plaintiff from SHU and Ad Seg confinement and release him into the general prison population where he may enjoy all the privileges and programs as other prisoners in population, and barring the Department of Correctional Services, its employees and agents from ever again placing plaintiff in any form of administrative confinement based on the allegations that have been fraudulently used to confine plaintiff to SHU for the last five-plus

<u>Page 20</u>

years.

    C.  Grant plaintiff compensatory damages in the following amount:

1)  $1,000,000 against defendant Thomas A. Coughlin, III;

2)  $500,000 against defendant Louis F. Mann;

3)  $500,000 against defendant Paul Levine;

4)  $100,000 against defendant Robert Cunningham;

5)  $100,000 against defendant Donald Selsky;

6)  $100 against defendant Allen Blades;

7)  $100 against defendant Thomas Mannoia;

8)  $100 against defendant G. Skroki;

9)  and $100 against defendant Edward Rudder.

    D.  Grant punitive damages of $100,000 each against defendants Coughlin, Selsky, Mann, Levine and Cunningham.

    E.  Grant plaintiff such other and further relief as this Court deems appropriate.

Respectfully Submitted,

*William Blake, Jr.*

William Blake, Jr.
87-A-5771
P.O. Box 700
Wallkill, N.Y. 12589