UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM BLAKE, JR.,

        **Plaintiff,**

        -against-

THOMAS A. COUGHLIN, III, Commissioner of Department of Correctional Services; DONALD SELSKY, Director of Special Housing and Inmate Discipline; LOUIS F. MANN, Warden, Shawangunk Correctional Facility; PAUL LEVINE, Deputy Warden for Inmate Programming; ROBERT CUNNINGHAM, Senior Counselor; EDWARD RUDDER, Prison Psychologist; OTHER UNKNOWN CORRECTIONS EMPLOYEES,

        **Defendants.**
_____

**PLAINTIFF'S AMENDED PROPOSED JURY INSTRUCTIONS**

9:92-CV-1351
(TJM/GJD)

    Plaintiff William Blake, Jr. claims that the defendants, while acting "under color of state law", intentionally deprived him of rights under the Constitution of the United States, to wit: the right not to be deprived of liberty without due process of law guaranteed by the 14th Amendment. Plaintiff claims that defendants violated his constitutional right to due process by failing to provide any meaningful review of their determination to place him administrative segregation.

    A person, including a prison inmate, may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates his rights under the United States Constitution:

    The plaintiff must prove each of the following elements by a preponderance of the evidence:

    1.    That the defendants intentionally committed acts that violated one or more of the plaintiff's Federal Constitutional rights that I have described to you;

    2.    That in so doing the defendants acted "under color" of the authority of the State of New York; and

    3.    That the defendants' acts were the legal cause of the plaintiff's damages.

Acts are done "under color of law" when a person acts or purports to act in the performance of official duties under any state, county or municipal law, ordinance, or regulation. The Court has found that the defendants in this case acted under color of law with respect to the plaintiff's continued confinement in Administrative segregation and, as such, the second element is established by the plaintiff.

Plaintiff claims that the defendants deprived him of liberty without due process of law in violation of his 14th Amendment right by the decision to keep him indefinitely in Administrative Segregation by a procedural sham of rubber-stamp periodic reviews. The 14th Amendment to the United States Constitution provides, in pertinent part, "that no state shall "deprive any person of life, liberty, or property, without due process of law".

Even if a prison inmate's initial assignment to administrative segregation is fair and comports with due process, the inmate has a continuing due process right in connection with prison officials' decision to maintain the inmate in administrative segregation. Plaintiff William Blake has a protected liberty interest in remaining free from long-term administrative segregation.

Unlike disciplinary segregation, where an inmate is assigned to SHU housing for a specific term, assignment to SHU for administrative segregation is indefinite.

Thus, prison officials must engage in some sort of periodic review of confinement of inmates placed in administrative segregation.

New York State Department of Corrections Regulations require that these reviews take place

every seven days for the first two months that the inmate is in administrative segregation, and every month thereafter. The regulations require the initial review to be made by the prison's three-member Administrative Segregation Committee.

The Committee's recommendation must then be forwarded in writing to the prison's Superintendent for final determination.

DOCS regulations, insofar as they pertain to Administrative Segregation Admissions, provide as follows:

> C. Administrative Segregation Admissions
>
> 1. This section applies to inmates assigned involuntarily to SHU as a result of a hearing conducted pursuant to 7 NYCRR, Chapter V, 254, which sets forth specific reasons why administrative segregation is warranted.
>
> 2. Administrative Segregation admission results from a determination by the facility that the inmate's presence in general population would pose a threat to the safety and security of the facility.
>
> 3. When housed in SHU, Administrative Segregation inmates will be subject to the same rules and regulations as those disciplinary inmates who have completed 30 days of satisfactory adjustment.
>
> 4. Inmates assigned to Administrative Segregation Status shall have such status reviewed every 7 days for the first two months and every 30 days thereafter by a three-member committee consisting of a representative of the facility Executive Staff, a Security Supervisor, and a member of the Guidance and Counseling Staff. The results of such review shall be forwarded, in writing to the Superintendent for final determination.
>
> 5. When deemed appropriate, the inmate will be evaluated and recommended for transfer to a facility where it is determined the inmate may be programmed into general population.

Because Administrative Segregation is indefinite in duration, prison officials must engage in some sort of periodic review of the confinement of such inmates. This periodic review does not

require officials to hold another hearing nor is it necessarily required that prison officials permit the inmate to submit additional evidence or a written statement. The prison officials may already be aware of the reasons why continued administrative segregation is justified.

However, although the periodic review procedure need not be highly structured, like all due process it must be meaningful. A decision by prison officials to keep an inmate in Administrative Segregation must be supported by some evidence. The reviews must be meaningful and not simply perfunctory.

Due process is not satisfied where the periodic reviews are a sham or a fraud. Rather, decisions to keep an inmate in administrative segregation must be based on some evidence as to the need for continued confinement in SHU. Administrative segregation may not be used as a pretext for indefinite confinement in SHU.

Administrative Segregation may not be used as a pretext for confining an inmate in SHU when he no longer presents a threat to the security of the facility. The officials reviewing an inmate's status must determine if the reason for Administrative Segregation confinement remains valid and must review "then-available" evidence, that is, evidence available at the time the review takes place. If new, relevant evidence becomes available following the initial review of the inmate's Administrative Segregation confinement, the Committee must consider it.

Plaintiff William Blake alleges that the periodic reviews of his Administrative Segregation confinement between 1989 and 1996 at Shawangunk were not meaningful because the recommendations of the review committee do not indicate any evidence upon which its recommendations were based; that the review committee failed and/or refused to consider then-available relevant evidence establishing that there no longer was a need for Administrative

Segregation; that the review committee failed and/or refused to consider any new facts or circumstances that occurred subsequent to his initial placement in Administrative Segregation.

Plaintiff William Blake further alleges that the periodic review procedure was a sham because when the members of the review committee actually recommended his release from Administrative Segregation, such recommendations were ignored by the Superintendents of the facility because a determination had been made in 1989 by the Commissioner of DOCS, Thomas Coughlin, III, that plaintiff would never be let out of Administrative Segregation, and that plaintiff's continued confinement was at the direction of Coughlin, thereby denying him due process of a meaningful periodic review.

If you find by a preponderance of the evidence that the due process regulations were not followed in a meaningful manner by one or more of the defendants, then the first element of the Section 1983 civil rights violation has been established.

If, however, you find that the regulations were followed in a meaningful manner by the defendants, then the first element of a civil rights violation has not been established.

Remember, as with all the elements of a Section 1983 civil rights violation, the burden of proof is on the plaintiff, William Blake.

If you find in favor of plaintiff, then you must award plaintiff such sum as you find from the preponderance of the evidence will fairly and justly compensate plaintiff for any damages you find plaintiff sustained as a direct result of the violation of plaintiff's constitutional rights. You should consider the following elements of damages:

    1.    The physical pain and suffering the plaintiff has experienced, the nature and extent of the injury, whether the injury is temporary or permanent.

[Remember, throughout your deliberations you must not engage in any speculations, guess or conjecture and you must not award any damages under this Instruction by way of punishment or through sympathy].

If you find in favor of plaintiff and against defendants, but you find that plaintiff's damages have no monetary value, then you must return a verdict for plaintiff in the nominal amount of One Dollar ($1.00).

In addition to damages mentioned in other instructions, the law permits the jury under certain circumstances to award the injured person punitive damages in order to punish the defendant for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

If you find in favor of plaintiff and against defendants then, in addition to any other damages to which you find plaintiff entitled, you may, but are not required to, award plaintiff an additional amount as punitive damages if you find it is appropriate to punish the defendants or deter the defendants and others from like conduct in the future. Whether to award plaintiff punitive damages and the amount of those damages are within your sound discretion.

Dated: September 1, 2005
      Albany, New York

    /S/
**JOHN B. CASEY**
**Pro Bono trial counsel for plaintiff**
**Dreyer Boyajian LLP**
**Bar Roll No.: 508187**
75 Columbia Street
Albany, New York 12210
Telephone No.; (518) 463-7784