**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**WILLIAM BLAKE, JR.,**

                                                        **Plaintiff,**

        **-against-**                                                    **9:92-CV-1351**

**JOAN F. COUGHLIN as the Administratrix**
**of the Estate of THOMAS A. COUGHLIN, III,**
**Commissioner of the Department of**
**Correctional Services;  LOUIS F. MANN,**
**Warden of Shawangunk Prison; and**
**ROBERT CUNNINGHAM, Senior Counselor,**

                                                        **Defendants.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

## I.  INTRODUCTION

        Presently before the Court are: (1) Plaintiff's motion pursuant to Fed. R. Civ. P. 59 for a new

trial on the issue of damages, or, alternatively, a "complete new trial," see Plt. Nov. 9, 2005 Notice

of Mot.; (2) Defendants' motion pursuant to Fed. R. Civ. 50(b) for judgment as a matter of law

granting them qualified immunity, and (3) Defendants' motion pursuant to Fed. R. Civ. P. 59(e) "to

amend the Judgement such that the injunctive relief sought in the complaint is denied and entering

judgment on that issue in favor of defendants." See Def. Dec. 23, 2005 Notice of Cross-Mot.  For

the reasons that follow, Plaintiff's motion and Defendants' Rule 50 motion are denied; and

1

Defendants' Rule 59(e) motion is granted.

## II. BACKGROUND

Plaintiff commenced this action asserting, *inter alia*, deprivations of his constitutional rights arising from his confinement in administrative segregation while at the Shawangunk Correctional Facility ("Shawangunk"). See generally Compl. [dkt. #1].  In this regard, Plaintiff brought constitutional tort claims seeking monetary damages and equitable claims seeking a judgment ordering his release from administrative segregation and prohibiting Defendants from "ever again placing plaintiff in any form of administrative confinement based on the allegations that have been fraudulently used to confine plaintiff to SHU for the last five-plus years."  Id. at pp. 19-20.

The case came on to be tried in October of 2005.  Because: (1) Plaintiff had been transferred out of Shawangunk on June 17, 1996; (2) persons other than the named defendants were responsible for Plaintiff's confinement to administrative segregation after his transfer, see e.g., 7 N.Y.C.R.R. § 301.4; (3) the possibility existed that events occurring after Plaintiff's transfer contributed to his then-current administrative segregation confinement, see Blake v. Selsky, 10 A.D.3d 774, 775-76 (3rd Dept. 2004); and (4) the parties had not conducted discovery on the issue of Plaintiff's then-current administrative segregation confinement, the Court bifurcated the claims and held the trial only on the tort claims asserting due process deprivations while Plaintiff was held in administrative segregation at Shawangunk Correctional Facility from December 7, 1989 through June 17, 1996. See Fed. R. Civ. P. 42(b).  At the conclusion of the trial, the jury determined that each of the defendants had violated Plaintiff's due process rights, and awarded Plaintiff nominal damages of $1.00.  On Plaintiff's claim for equitable relief, the Court determined that, despite the fact that Commissioner Coughlin retired while this case was pending (and has since passed way), a

2

justiciable case or controversy continued to exist against the current Commissioner. See Fed. R. Civ.

P. 25(d)(1); Ex Parte Young, 209 U.S. 123 (1908); Verizon Maryland Inc. v. Public Serv. Comm.

Of Maryland, 122 S. Ct. 1753, 1760 (2002).  Accordingly, the Court advised Plaintiff he could

either continue with the equitable claim in this action (which would require additional discovery and

a second trial), or he could institute a new action in which he could seek both compensatory and

injunctive relief from his current confinement.

Plaintiff was silent on the issue of whether he wished to continue in the present matter on his

claims for injunctive relief, but he did file a Notice of Appeal of the jury's verdict[1] and the instant

post-trial motion.  The Court found that the interests of justice dictated that the claims for equitable

relief should be severed from the tort claims so that a final, appealable judgment could be entered on

the tort claims. See Fed. R. Civ. P. 54(b)("When more than one claim for relief is presented in an

action ... the court may direct the entry of a final judgment as to one or more but fewer than all of

the claims ... upon an express determination that there is no just reason for delay and upon an

express direction for the entry of judgment."). Accordingly, the Court severed the claims, see Dec.

6, 2005 Order, and entered judgment on the tort claims. See Partial Final Judgment.  The Court will

now address the pending post-trial motions.

## III.  STANDARD OF REVIEW

### a.  Rule 50

"In this Circuit, a party seeking to vacate a jury verdict and enter judgment as a matter of law

carries a 'heavy burden.'" Tesser v. Board of Educ. of City School Dist. of City of New York, 190

---

[1]   At the time, the Court had not entered final judgment because the claim for equitable relief remained outstanding. The Notice of Appeal was rejected as premature because a final judgment has not been entered. See Nov. 7, 2005 Document Rejection Order [dkt. # 204].

Case 9:92-cv-01351-TJM-GJD   Document 230   Filed 08/08/06   Page 4 of 25

F. Supp.2d 430, 436 (E.D.N.Y. 2002)(citing Burke v. Spartanics Ltd., 252 F.3d 131, 136 (2d Cir. 2001); Ryduchowski v. Port Authority of New York and New Jersey, 203 F.3d 135, 142 (2d Cir. 2000)).  "A motion for [JMOL] pursuant to FED. R. CIV. P. 50, may not properly be granted unless: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]."  Myers v. County of Orange, 157 F.3d 66, 73 (2d Cir. 1998)(internal quotations and citation omitted), cert. denied, 525 U.S. 1146 (1999).

"In ruling on a motion for JMOL, the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."  Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted).  In reviewing the evidence, the Court should consider everything in the record, however, "it *must disregard all evidence favorable to the moving party that the jury is not required to believe*. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."  Id. (citation omitted)(emphasis in original).

**b.  Rule 59**

Rule 59(a) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law

in the courts of the United States."  The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice."  <u>DLC Management Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133 (2d Cir. 1998)(quotation marks and citation omitted).  "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." <u>Id.</u>

"Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict.  Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.  A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious." <u>Id.</u> (internal citations and quotations omitted).  Therefore, "a court should rarely disturb a jury's evaluation of a witness's credibility." <u>Id.</u> (internal citations and quotations omitted).

Rule 59(e) of the Federal Rules of Civil Procedure provides that a party may move to alter or amend a judgment.

> Under that rule a judgment, once entered, may be amended only in the event of a "clear error of law or [a] manifest injustice." <u>Munafo v. Metro. Transp. Auth.</u>, 381 F.3d 99, 105 (2d Cir. 2004)(citations and internal quotations omitted). When a Rule 59(e) motion addresses a matter already considered by the court, it is governed by an even more exacting standard. <u>E.g.</u>, <u>Wilson v. Great Am. Indus., Inc.</u>, 770 F. Supp. 85, 89 (N.D.N.Y.1991) (McCurn, J.). In such an instance, reconsideration is generally granted only in the event of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Wilson</u>, 770 F. Supp. at 89 (citations and internal quotations omitted); <u>see also</u> <u>Range Rd. Music, Inc. v. Music Sales Corp.</u>, 90 F. Supp.2d 390, 391-92 (S.D.N.Y. 2000).  Mere disagreement with the court's prior ruling does not constitute a basis for reconsideration of a judgment entered.  <u>Range Rd. Music, Inc.</u>, 90 F. Supp.2d at 392.

<u>Cargill, Inc. v. Sears Petroleum & Transport Corp.</u>,  388 F. Supp. 2d  37,  80-81 (N.D.N.Y.  2005)**.**

## IV. DISCUSSION

### a. Plaintiff's Motion for a New Trial

Plaintiff moves pursuant to Rule 59(a) for a new trial on damages, or, alternatively, for a complete new trial based on his belief that the evidence warranted an award of monetary damages above the $1 nominal damages he received from the jury. In this regard, Plaintiff argues that the jury's decision to award him only $1.00 in damages is inconsistent with its decision that his constitutional rights were violated, and that the $1.00 damage award is against the weight of the evidence. The Court disagrees.

At trial, the jury was charged that in order for Plaintiff to establish a claim under Section 1983, he must prove: (1) that the conduct complained of was committed by a person acting under color of state law; (2) that this conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States; and (3) that this conduct was a proximate cause of the injuries and consequent damages sustained by the plaintiff. The first element was not contested and therefore was resolved in Plaintiff's favor. The second element was based on Plaintiff's claim that each Defendant's conduct deprived him of his right to meaningful periodic reviews of his administrative segregation status in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As is evident by the jury's verdict, the jury determined that each Defendant did violate Plaintiff's due process rights.

The crux of Plaintiff's motion turns on the third element. In this regard, Plaintiff argues that since the third factor requires the jury to find that Defendants' conduct "was a proximate cause of the injuries and consequent damages sustained by the plaintiff," and since the jury found in Plaintiff's favor on liability, the jury necessarily found that he suffered "injuries and consequent

damages" from being improperly subjected to administrative segregation.  This, Plaintiff contends, warrants an award of damages in the amount of $100 to $175 per day that he was confined in administrative segregation.  See Plt. Mem. L. p. 9 (citing cases in which awards were in this range).

What Plaintiff fails to recognize is that being subjected to a constitutional violation, while sufficient to sustain the claim, does not mean, *a fortiori,* that he is entitled to compensatory damages. See Kerman v. City of New York, 374 F. 3d 93, 123 (2d Cir. 2004)("A finding that the plaintiff has been deprived of a constitutional right does not automatically entitled him to a substantial award of damages").  Indeed, in this regard the jury was charged:

> [I]f you return a verdict for the plaintiff, but find that he has failed to prove by a preponderance of the evidence that he suffered any actual damages, then you must return an award of nominal damages not to exceed one dollar.  Nominal damages must be awarded when a plaintiff has been deprived by a defendant of a constitutional right but has not suffered any actual damage as a natural consequence of that deprivation.  Therefore, if you find that the plaintiff has suffered no injury as a result of the defendant's conduct other than the fact of a constitutional deprivation, you must award nominal damages not to exceed one dollar.

On the issue of actual damages, the jury was charged that:

> Before plaintiff may recover damages for any injuries, he must first show by a preponderance of the evidence that such injury would not have come about were it not for a defendant's conduct.  Plaintiff seeks damages for the time that he spent in administrative segregation.  Plaintiff must show by a preponderance of the evidence that such injury would not have come about but for the defendant's conduct.  Thus, if you find that a defendant committed a violation of plaintiff's due process rights, you may award actual damages against this defendant only if you conclude that an impartial decision maker, reviewing the facts then available, would have released Mr. Blake from administrative segregation.  If you find that an impartial decision maker would have also continued Mr. Blake's confinement in administrative segregation, then you cannot award actual damages.

Throughout the trial, the jury heard evidence of the nature of Plaintiff's crimes that resulted in his incarceration, his threats towards prosecutors and a judge, and his threats of escape. The jury

also heard of Plaintiff's misconduct while in administrative segregation, and of various prison officials' opinions of the potential risk of escape, or injury to himself or other inmates, that Plaintiff posed if he was moved into the "general population" in the prison.

The jury was also charged that New York Department of Correctional Services Regulations required at the time that reviews of his administrative segregation placement take place every seven days for the first two months Plaintiff was in administrative segregation and monthly thereafter; that the initial review was made by a prison's three member Administrative Segregation Committee ("Ad. Seg. Committee"); and that the Ad. Seg. Committee's recommendation was then forwarded in writing to the prison's Superintendent for final determination. On the issue of whether a constitutional violation occurred, the Court charged the jury, inter alia, that

> [The Due Process requirement of periodic review of an inmate's administrative segregation placement ] does not require officials to hold another hearing nor is it necessarily required that prison officials permit the inmate to submit additional evidence or a written statement. The prison officials may already be aware of the reasons why continued administrative segregation is justified. . . .
>
> . . . While prison officials may already be aware of the reasons why continued administrative segregation is justified, the review must be conducted by a decision-maker who does not prejudge the evidence and who cannot say how he would assess evidence he has not yet seen.
>
> As I told you at the beginning of the trial, it has already been determined that Mr. Blake's initial placement into administrative segregation was lawful. Prison officials could, during their periodic reviews, consider the reason or reasons that Mr. Blake was initially placed in administrative segregation in making their periodic decisions whether to keep him in this confinement. However, the Due Process Clause requires that the reviews take into account then-current information relating to the appropriateness of continued SHU confinement. In the case of plaintiff, whose placement was based, in part, on his risk of escape, prison officials were required to consider any information relating to a change in his risk of escape during the periodic reviews.
>
> Given the evidence and the charge to the jury, the jury might well have accepted Plaintiff's

contention that Defendant Coughlin ordered Plaintiff to be indefinitely confined in administrative segregation, that Defendant Cunningham, a member of the Ad. Seg. Committee, carried out that order by continuously recommending administrative segregation in the periodic reviews,  and that Defendant Mann, Shawangunk's warden, finalized Coughlin's order by either rubber stamping the Ad. Seg. Committee's recommendation or ordering such confinement regardless of the recommendation without considering then-available evidence.  In this regard,  the jury might well have concluded that Defendants violated Plaintiff's constitutional right to meaningful periodic reviews by prejudging his escape risk or danger to prison security if placed in general population regardless of the actual risk presented at the time of the periodic reviews.

However, the jury might also have concluded that Plaintiff would nonetheless have remained in administrative segregation during the entire period at Shawangunk *even if* he had been provided meaningful periodic reviews.  As indicated, the record contains testimony of various Shawangunk officials who testified that, in their opinions, Plaintiff was not properly suited for release into general population while he was at Shawangunk.  The jury was entitled to credit all of this testimony.  There is ample support in the record for a conclusion that Plaintiff suffered no actual injury because he would have been in administrative segregation the entire period at Shawangunk despite the denial of the constitutional right to meaningful period reviews. While Plaintiff might not agree with the jury's determination on damages, the determination is not against the weight of the evidence, it is not egregious given the evidence presented, and it does not amount to a miscarriage of justice.   Therefore, Plaintiff's motion for a new trial is **DENIED**.

**b.  Defendants' Rule 50 and Rule 59 Motions - timeliness**

The Court next turns to Defendants' post-trial motions.  Plaintiff contends that these motions

were untimely and, therefore, objects to the Court considering the motions. The objection is without merit.

Post-trial motions brought under Rules 50 and 59(e) motion must be filed no later than 10 days after entry of judgment. Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59(e). Judgment was entered on Friday, December 9, 2005. The day of entry of judgment is excluded from the 10-day computation. Fed. R. Civ. P. 6(a). Because the time period in question is less than 11 days, Saturdays and Sundays are also excluded from the computation. Id. Defendants' Notice of Motion was filed on Friday, December 23, 2005, the tenth day after entry of judgment. The Notice of Motion is a written statement that indicates that Defendants were, at the time of filing, making post-trial motions. See Def. Not. of Motion. The Notice of Motion sets forth the basis of the motions and is not merely a statement of some future intent to make post-trial motions. Compare Meriwether v. Coughlin, 879 F.2d 1037, 1040-41 (2d Cir. 1989)(oral statement by counsel that he was, at that time, making a post-trial motion sufficient to stop the 10-day clock) with Rodick v. City of Schenectady, 1 F.3d 1341, 1346-47 (2d Cir. 1993)(oral statement indicating a future intent to file a post-trial motion insufficient to stop the 10-day clock). Accordingly, the filing of the Notice of Motion stopped the 10-day clock, and since the Notice of Motion was filed on the tenth day, Defendants' motions were timely filed.[2]

### b. Defendants' Rule 50 motion Seeking Qualified Immunity

Turning to the merits, Defendants contend that they are entitled to judgment as a matter of law granting them qualified immunity because, at all times relevant to this action, the constitutional

---

[2] Once the motion is made, the Court may allow the movant to file a supporting memorandum of law and other documentation at a later date.

due process right to meaningful periodic reviews of a prisoner's administration segregation confinement was not clearly established "in a particularized sense" such that reasonable officials in Defendants' positions would have understand that their actions violated the law. Def. Mem. L. p. 11.  In this regard, Defendants argue that despite that the United States Supreme Court said in 1983 that prisoners confined to administrative segregation must be given periodic reviews to ensure that administrative segregation is not used as a pretext for indefinite confinement of an inmate, and despite that the Second Circuit said in 1989 that in order to comport with due process the review must be "meaningful,"  the term "meaningful review" has not been defined by the Supreme Court or the Second Circuit with such clarity that reasonable officers in Defendants' positions would have known what they needed to do to provide "meaningful periodic reviews" and avoid violating the law.  See  Def. Mem. L. pp. 11-14 (citing, inter alia, Hewitt v. Helms, 459 U.S. 460, 477 n. 9 (1983) and Gittens v. Lefevre, 891 F.2d 38, 41 (2d Cir. 1989)).  Accordingly, Defendants contend that, because the right in question was not clearly defined, they are entitled to qualified immunity. The Court disagrees.

"The doctrine of qualified immunity offers protection for 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McClellan v. Smith, 439 F.3d 137, 147 (2d Cir. 2006)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Whether a right is clearly established depends on the state of the law in existence at the time of the challenged action. Kerman v. City of New York, 374 F. 3d 93, 108 (2d Cir. 2004); see Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 158 (2d Cir. 2005)( "[P]ublic officials ... are protected by qualified immunity from civil liability for actions taken in their official capacity,

if those actions were objectively reasonable in light of clearly established rules then extant."). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). "Stated differently, '[a] right is clearly established if 'in light of preexisting law the unlawfulness [of the action taken is] apparent.'" Anderson v. Recore, 446 F.3d 324, 333 (2d Cir. 2006)(quoting Anderson, 483 U.S. at 640).

The right to meaningful periodic reviews, and the contours of that right, were clearly established at all times relevant to this action.   Indeed, in McClary v. Coughlin, 87 F. Supp. 2d 205, 212 (W.D.N.Y. 2000), aff'd sub nom McClary v. Kelly, 237 F.3d 185 (per curiam), the Western District of New York rejected virtually the same argument as raised by Defendants in this case. McClary v. Coughlin, 87 F. Supp. 2d at 212.  In that case, Defendants argued that "while Hewitt may have clearly established that an inmate in administrative segregation was entitled to meaningful review of his status," they were nevertheless entitled to qualified immunity because "neither the United States Supreme Court nor the Court of Appeals for the Second Circuit has clearly defined what constitutes meaningful review." Id.  In rejecting the argument, the Western District wrote:

> Defendants' theory, in sum and substance, is that absent a precise and exact definition of what a meaningful periodic review of administrative segregation entails, prison officials are immunized from any conduct they may engage in while conducting such reviews no matter how contrived or fraudulent or pretextual their conduct may be determined by a jury to be. Put differently, defendants argue that until meaningful periodic review is precisely defined by the Supreme Court or the Second Circuit, defendants are, as a matter of law, immune from liability for *meaningless* periodic reviews.
>
> This Court does not believe the law of qualified immunity requires the wearing of such

blinders.  Precise "definitional specificity" has never been the determinant for "clearly established" legal rules.   To be sure, the operation of the "clearly established" standard "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified."  Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).   But the important inquiry is not simply whether "the very action in question has previously been held unlawful," but whether the unlawfulness of the actions would be readily apparent to reasonable prison officials.  Id. at 640, 107 S.Ct. 3034.   See Alexander v. Perrill, 916 F.2d 1392, 1397 (9th Cir. 1990)("the law simply does not require that we find a prior case with the exact factual situation in order to hold that the official breached a clearly established duty").

This was not a case about the subtleties of procedural due process or the nuances of what constitutes "meaningful" review of administrative segregation determinations.   McClary's theory at trial was, in essence, that once the Goord memorandum (Exhibit 1A) was issued, the due process rights he was afforded under DOCS regulations to challenge his initial or continued assignment to administrative segregation were meaningless, and simply used by the defendants as "a pretext for indefinite confinement" in SHU.  See Hewitt v. Helms, 459 U.S. at 477 n. 9, 103 S.Ct. 864. Moreover, the Court's charge to the jury on the law of procedural due process with respect to continued confinement in administrative segregation required the jury to address only fundamental tenets of due process, basic principles that were "clearly established" during the relevant time period.

 McClary v. Coughlin, 87 F. Supp. 2d at 212-213.

    This Court agrees with the Western District's legal analysis and, apparently, so too did the

Second Circuit.  See McClary v. Kelly, 237 F.3d at 186 ("Defendants claim that they are entitled to

qualified immunity.  . . . We find no grounds for reversal.   The judgment of the district court is

therefore AFFIRMED.").  Given the striking similarities between the proof presented in the two

cases, the plaintiffs' theories in the two cases, and the nature of the charge given in the instant case,[3]

---

[3] In this regard, this Court charged the jury as follows:

The Due Process Clause provides, in pertinent part, "that no state shall deprive any person of life, liberty, or property, without due process of law."   An inmate has a protected liberty interest in remaining free from long-term administrative segregation.  Even if an inmate's initial assignment to administrative segregation is fair and comports with due process, the inmate has a continuing due process right in connection with prison officials' decisions to maintain the inmate in administrative segregation.  Unlike disciplinary segregation where an inmate is assigned to Special Housing Unit, or SHU, for a specific term, assignment to SHU for administrative segregation is indefinite.  Thus, prison

(continued...)

[3](...continued)

officials must engage in some sort of periodic review of confinement of inmates placed in administrative segregation.

New York Department of Corrections Regulations require that these reviews take place every seven days for the first two months the inmate is in administrative segregation and monthly thereafter. The regulations require the initial review to be made by the prison's three member Administrative Segregation Committee. The Committee's recommendation must then be forwarded in writing to the prison's Superintendent for final determination. These regulations provide a procedural framework for the process of periodic reviews.

However, the fact that the procedure was followed does not necessarily mean that the inmate received meaningful reviews. By the same reasoning, the fact that the procedure was deviated from does not necessarily mean that the inmate was denied meaningful reviews. If you find that the defendants abided by these regulations, then you may, if you think it is appropriate, consider that fact in determining whether Plaintiff received meaningful periodic reviews. By the same reasoning, if you find that the defendants deviated from these regulations, then you may, if you think it is appropriate, consider that fact in determining whether Plaintiff was denied meaningful periodic reviews.

This periodic review does not require officials to hold another hearing nor is it necessarily required that prison officials permit the inmate to submit additional evidence or a written statement. The prison officials may already be aware of the reasons why continued administrative segregation is justified. However, although the periodic review procedure need not be highly structured, like all due process, it must be meaningful.

In order for a review to be constitutionally adequate, the decision-maker must be impartial. While prison officials may already be aware of the reasons why continued administrative segregation is justified, the review must be conducted by a decision-maker who does not prejudge the evidence and who cannot say how he would assess evidence he has not yet seen.

As I told you at the beginning of the trial, it has already been determined that Mr. Blake's initial placement into Administrative Segregation was lawful. Prison officials could, during their periodic reviews, consider the reason or reasons that Mr. Blake was initially placed in Administrative Segregation in making their periodic decisions whether to keep him in this confinement. However, the Due Process Clause requires that the reviews take into account then-current information relating to the appropriateness of continued SHU confinement. In the case of plaintiff, whose placement was based, in part, on his risk of escape, prison officials were required to consider any information relating to a change in his risk of escape during the periodic reviews.

A decision by prison officials to keep an inmate in Administrative Segregation must be supported by some evidence. The reviews must be meaningful and not simply perfunctory. Due process is not satisfied where the periodic reviews are a sham or a fraud. Rather, decisions to keep an inmate in administrative segregation must be based on some evidence as to the need for continued confinement in SHU. Administrative Segregation may not be used as a pretext for confining an inmate in SHU when he no longer presents a threat to the security of the facility. The officials reviewing an inmate's status must determine if the reason for Administrative Segregation confinement remains valid and must review "then-available" evidence, that is, evidence available at the time the review takes place. If new, relevant evidence becomes available following the initial review of the inmate's Administrative Segregation confinement, prison officials must consider it.

(continued...)

14

this Court reaches the same conclusion as did the Western District.  Quite simply: "Based on the

jury's factual finding here, this Court has no hesitancy in concluding that (1) the defendants' conduct

violated clearly established constitutional rights, and (2) it was not objectively reasonable for the

defendants to believe that their acts did not violate those established rights." McClary v. Coughlin,

87 F. Supp. 2d at 214-215 (and cases cited thereat); see Giano v. Kelly, 2000 WL 8768555, at * 24

(W.D.N.Y. 2000)(denying qualified immunity to prison officials on plaintiff's due process claim

arising from his confinement in administrative segregation between October 1988 and August 1990

because "it was clearly established at the time . . . that a *pro forma* review process which failed to

take into consideration readily available information relevant to the reasons for the inmate's

confinement amounted to a denial of due process. Nor can defendants claim that a reasonable officer

would consider their actions reasonable in light of clearly established law and the information that

defendants possessed.").

Given the clearly established law in existence at the time requiring prison officials to afford

Plaintiff a meaningful periodic review of his administrative segregation placement taking into

---

[3](...continued)

On the issue of whether Mr. Blake's due process rights were violated, you are not being asked to determine whether the prison officials' determinations to keep Mr. Blake in administrative segregation were right or wrong.  Prison officials are entitled to deference in their determinations on how to run their facilities based upon their experience in such areas.  You may not substitute your judgment for that of the prison officials.  In assessing a threat to institutional safety, a prison administrator like any of the defendants may consider the character of the inmate confined in the institution, recent and longstanding relationships between prisoners and guards, among the prisoners themselves, their personal experiences, the breadth of their knowledge, and the like.

The issue before you, at least with regard to liability, is not whether you agree with the decision to keep plaintiff in Administrative Segregation or whether you would have continued that status, but whether, in reaching their determinations or in taking their actions, defendants denied Plaintiff his right to due process.  That is, you are being asked to determine whether any of the defendants acted in manner that deprived Plaintiff of  meaningful periodic reviews of his Administrative Segregation status, or determined to hold him in this confinement, or did something to insure that confinement, regardless of the evidence supporting that determination.

account then-existing factors, no reasonable officer could conclude that it was reasonable to order that Plaintiff never be removed from such segregation, or to simply recommend or rubber stamp his continued confinement in such status in each successive "review" despite the evidence that might have developed from the elapsing time period of his confinement. While Defendants Mann and Cunningham testified that they did consider then-current information in each review, and while Commissioner Glenn Goord testified that neither he nor Commissioner Coughlin ever ordered Plaintiff's indefinite confinement in administrative segregation, the jury was able to assess the evidence, including the credibility of the witnesses, and evidently accepted Plaintiff's theory to the contrary.  In light of this determination and the clearly established law, Defendants are not entitled to qualified immunity.  See also Koch v. Town of Brattleboro, 287 F.3d 162, 165-166 (2d Cir. 2002)(The clearly established prong of the qualified immunity analysis focuses on whether the defendant's actions violated rights that were so apparent that a reasonable official in the same circumstances would have know that their actions were unlawful.); Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001)("[I]t can never be objectively reasonable for a governmental official to act with the intent that is prohibited by law.").  Therefore, this motion is **DENIED.**

### c. Defendants' Rule 59(e) motion to Amend the Judgment

Finally, Defendants move pursuant to Rule 59(e) to amend the judgment to dismiss Plaintiff's remaining claims for equitable relief.  For the following reasons, the motion is granted.

Plaintiff sought in the complaint, *inter alia*, an injunction ordering defendants to release him from his then-current administrative segregation confinement, and barring the New York State Department of Correctional Services (DOCS)  from "ever again placing plaintiff in any form of administrative confinement based on the allegations that have been fraudulently used to confine

plaintiff to SHU for the last five-plus years." Compl. pp. 19-20 [dkt. #1].   As indicated above, the

Court bifurcated the claims for monetary damages from the claims seeking equitable relief because

the proof necessary to support the two categories of claims were not one and the same.  See Dec. 6,

2005 Dec. & Ord.,  p. 2.  The Court further held that "despite the fact that Commissioner Coughlin

retired while this case was pending (and has since passed way), a justiciable case or controversy

continued to exist against the current Commissioner" who was substituted as a defendant on the

equitable relief claims pursuant to Fed. R. Civ. P. 25(d)(1).  Id.  Of course, the substitution under

Fed. R. Civ. P. 25(d)(1) is only of the current Commissioner in is official capacity and, therefore,

the remaining claims for equitable relief are against DOCS.  See Mathie v. Fries, 121 F.3d 808, **818**

(2d Cir. 1997)("A claim against a government officer in his official capacity is, and should be

treated as, a claim against the entity that employs the officer. . . .")(citing Kentucky v. Graham, 473

U.S. 159, 165-66 (1985)).  Accordingly,  the question now before the Court is whether the claims

for equitable relief against DOCS are justiciable.  Defendants argue that they are not because they

have either previously been denied, or are moot.  Having reflected on the matter, the Court agrees

with the Defendants and, therefore, grants Defendants' Rule 59(e) motion in order to amend the

judgment.

　　In addressing the remaining equitable claims, the Court must first define the claims

contained in the complaint.  The Second Circuit has instructed that a court must interpret a *pro se*

litigant's pleadings liberally and so as to "raise the strongest argument they suggest." McPherson v.

Coombe, 174 F.3d 276, 280 (2d Cir. 1999) .  Doing so with regard to Plaintiff's complaint yields the

following claims for equitable relief:  (1) an order releasing Plaintiff from administrative

segregation confinement at Shawangunk; (2) an order releasing Plaintiff from his current

administrative segregation confinement; and (3) an order preventing DOCS officials from ever considering the allegations used to place Plaintiff in administrative confinement while at Shawangunk in any future administrative confinement determinations.

The Court will first address the question of mootness.  In order to maintain jurisdiction over an action, an actual case or controversy must exist "at all stages of review, not merely at the time the complaint is filed." Prins v. Coughlin, 76 F.3d 504, 506  (2d Cir. 1996).  When there no longer exists an actual case or controversy, the case is deemed "moot."  The Supreme Court has said that "mootness [is] the 'doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" United States Parole Commn. v. Geraghty, 445 U.S. 388, 397 (1980)(quoting H. Monaghan, *Constitutional Adjudication: the Who and When*, 82 Yale L. J. 1363, 1384 (1973)). Standing, in turn, requires that:

> First, a plaintiff must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent." Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed. 2d 135 (1990) (internal quotation marks and citation omitted). Second, a plaintiff must establish "a causal connection between the injury and the conduct complained of-the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not ··· th[e] result [of] some third party not before the court.' " Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Third, a plaintiff must show the" 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." [Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)].

McConnell v. Federal Election Com'n, 540 U.S. 93, 225-26 (2003).

### (1) Release from Ad. Seg. at Shawangunk

Regarding Plaintiff's claim for equitable relief from his administrative segregation at

18

Shawangunk, the claim is rendered moot because Plaintiff was transferred out of Shawangunk in 1996. The applicable New York regulations provide that the warden of the facility in which a prisoner is housed makes the ultimate determination as to a prisoner's continued placement in administrative segregation in a specific facility.  See 7 N.Y.C.R.R. § 301.4.  Hence, the claim seeking an order requiring Plaintiff's immediate release from administrative segregation at Shawangunk is a claim for injunctive relief against officials at the transferring facility and not against DOCS.  "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."  Prins, 76 F.3d at 506.  Because DOCS is the only defendant on the equitable clams, see Fed. R. Civ. P. 25(d)(1), this claim for relief is rendered moot by Plaintiff's transfer out of Shawangunk.

### (2) Release from Plaintiff's current Administrative Confinement

Liberally interpreting Plaintiff's injunctive relief claims as a request for an order releasing him from his current administrative segregation confinement (no matter where it is imposed in the DOCS system), the claim is also moot.  Plaintiff cannot now establish a causal connection between the injury (his current confinement in administrative segregation) and the complained of action in this case ( the denial of due process in the administrative segregation reviews at Shawangunk). Rather, as indicated above, the decision regarding Plaintiff's continuation in his current administrative segregation confinement rests with the warden and the Ad. Seg. Committee members in the facility where Plaintiff is now confined. These individuals are not before the Court.

Further, assuming *arguendo* that DOCS is legally responsible for Commissioner Coughlin's "order" that Plaintiff remain in administrative segregation, intervening events have cut off the link of causation from Commissioner Coughlin's actions to the present time.  In March of 1998,

following Plaintiff's transfer out of Shawangunk, Plaintiff received a four year sentence (reduced to

three years on appeal) to disciplinary Special Housing Unit (SHU) for possessing a weapon, and

"later received two [disciplinary charge] tickets for dirty urines [*sic*] and ended up with a total of

about 4 years and 3 months SHU disciplinary time."  Blake Feb. 6, 2006 Aff, ¶¶ 4, 8.   Following

completion of Plaintiff's SHU sentence in June of  2002, a hearing was conducted to determine

whether Plaintiff should be placed back into administrative segregation confinement.  It was

determined that Plaintiff should be place in administrative confinement and Plaintiff appealed the

decision to the Commissioner and eventually to the New York State Supreme Court, Appellate

Division, Third Department. See Blake v. Selsky, 10 A.D.3d 774, 775-76 (3rd Dept. 2004).  In

upholding the placement determination, the Third Department stated: "In our view, the violent and

heinous nature of petitioner's 1987 escape attempt, his subsequent threats to escape and kill those

involved in his prosecution and the confidential testimony of prison officials, independently

assessed by the Hearing Officer for its reliability and credibility, that petitioner had recently engaged

in activities and communications indicating renewed interest in escaping from the facility, provide

substantial evidence supporting the Commissioner's determination that petitioner continues to

present a safety and security risk to the facility which renders him unsuitable for the general prison

population." Id.   The reference to "recently engaged in activities and communications indicating

renewed interest in escaping from the facility" appears to indicate conduct that occurred after

Plaintiff's transfer out of Shawangunk.

Because the Due Process Clause requires the fact finder to take into account evidence of a

prisoner's then-current risk to prison security if released into the general population, including the

reasons for the prisoner's original placement in administrative segregation and events occurring

since his original placement, and because the Third Department found substantial evidence supporting the administrative segregation determination in 2002, the chain of causation between the individual Defendants' conduct in this case and Plaintiff's injury is severed. Quite simply, while the constitutional violations determined by the jury (denial of due process) *may be* a proximate cause of Plaintiff's current confinement, it may also be that his current confinement is caused by his own post-Shawangunk behavior. Plaintiff's own concessions of subsequent misconduct and the Third Department's decision that there was a valid reason to place Plaintiff back in administrative segregation confinement in 2002 indicate that it is the latter. Given the judicial determination upholding a subsequent fact finding regarding Plaintiff's placement in administrative segregation in 2002, the Court cannot say, as a matter of law, that the constitutional violations by the three named individual defendants - including the violation by the former Commissioner - is the sole cause of Plaintiff's current administrative segregation and, therefore, the claim fails to meet the causation requirement of standing.

Still further, Plaintiff cannot show that he is entitled to relief that will remedy the alleged injury in fact. Plaintiff's injury, at least for purposes of this claim, is his continued confinement in administrative segregation. As indicated, the persons responsible for assessing and determining Plaintiff's continuation in his current administrative segregation confinement are not before the Court in this action. While the Court has considerable authority to effectuate its orders and prevent the continuation of unconstitutional conduct proven in the courtroom, the Court must be ever cognizant of the authority and discretion afforded to prison officials in the realm of prison security. See Thornburgh v. Abbott, 490 U.S. 401, 415, 109 S. Ct. 1874 (1989)( Maintaining prison security is an undeniably significant penalogical interest); Shaw v. Murphy, 121 S. Ct. 1475, 1480

(2001)("[P]rison officials are to remain the primary arbiters of the problems that arise in prison management"); Duamutef v. Hollins, 297 F.3d 108, 113 (2d Cir. 2002)(Recognizing the "paramount importance of exercising caution in matters of prison security.").  Without proof of the evidence considered by the Ad. Seg. Committee and Warden at Plaintiff's current facility of incarceration, and without a demonstration that these non-parties have violated Plaintiff's constitutional right to due process, the Court would not order DOCS to release Plaintiff from his current administrative segregation confinement.  Rather, to accomplish what Plaintiff seeks in this claim, he must have the proper parties before the Court.  He does not, and therefore Plaintiff cannot redress the "injury" of his present confinement in the present action.  The claim must be dismissed as moot.  Because the claim has not been litigated on the merits, it is dismissed without prejudice to litigation in another action.  Plaintiff can reassert this claim in a new action naming the proper parties, and may use the jury's determination in this case to support his theory of why he is being improperly confined.

The Court notes that this case, on this record, does not present a claim falling within the recognized mootness exception for those cases that are capable of repetition yet evading review.  There is no evidence that Plaintiff was transferred out of Shawangunk in order to avoid review of his request to be released from administrative segregation confinement and, as indicated above, superseding events provide a valid basis for his post-Shawangunk administrative segregation confinement nonetheless.  However, if Plaintiff commences a new action seeking similar equitable relief  and he is then transferred before the claim is adjudicated, it may raise the potential that the transfer is not for legitimate penalogical reasons but rather to prevent review of the claim.  Such circumstances, if established, might indicate to a subsequent reviewing court that the claim has not been rendered moot by the transfer.

**(3) Preventing DOCS officials from "ever again placing plaintiff in any form of administrative confinement based on the allegations that have been fraudulently used to confine plaintiff to SHU for the last five-plus years."**

Finally, the Court turns to Plaintiff's request for an order baring DOCS officials from "ever again placing plaintiff in any form of administrative confinement based on the allegations that have been fraudulently used to confine plaintiff to SHU for the last five-plus years." Defendants contend that this claim is extinguished because the Court ruled from the bench at trial that Plaintiff was not entitled to an injunction barring DOCS officials from ever again considering the nature and circumstances of Plaintiff's crime of conviction as a basis for future administrative segregation confinement decisions. See Def. Repl. Mem. L. p. 5. Defendants do not provide a transcript of that ruling but Plaintiff does not challenge the representation in his Sur-Reply. See Blake Feb. 21, 2006. Nonetheless, the current judgment does not reflect the ruling so, for sake of clarity, the Court will address the issue here.

As the Court charged the jury, the fact finder can always taking into account Plaintiff's original crime of conviction (and other evidence surrounding that crime) when making subsequent determinations regarding the danger that Plaintiff poses to prison security if placed in a facility's general population. The Court would not order DOCS officials to act to the contrary, especially in circumstances such as this that concern prison security.

Moreover, the fact that Plaintiff's was denied constitutional due process in his periodic reviews at Shawangunk does not mean that there did not exist a valid basis to confine him to administrative segregation. As evident by the jury's award of only nominal damages, there existed a valid basis to hold Plaintiff in administrative segregation while at Shawangunk despite the denial of proper review by the decision makers. Consequently, even though Plaintiff asserts that he was held

23

in administrative segregation based upon "fraudulent allegations," the jury's determination is to the contrary.  Thus, any claim seeking to prevent prison officials from considering the nature and circumstances of Plaintiff's crime of conviction, or circumstances surrounding that crime, or any of the other evidence of Plaintiff's dangerousness to prison security while he was at Shawangunk, is **denied**.

For these reasons,  Defendants' Rule 59(e) motion is **GRANTED** and the Judgment is **AMENDED** to reflect this Decision and Order.

## V.  CONCLUSION

For the reasons set forth above:

(1) Plaintiff's motion pursuant to Fed. R. Civ. P. 59 for a new trial on the issue of damages, or, alternatively, a "complete new trial," is **DENIED**;

(2) Defendants' motion pursuant to Fed. R. Civ. 50(b) for judgment as a matter of law granting Defendants qualified immunity is **DENIED**;

and

(3) Defendants' motion pursuant to Fed. R. Civ. P. 59(e) to alter or amend the judgement is **GRANTED**.   Plaintiff's claim for injunctive relief seeking to be released from administrative segregation is **DISMISSED WITHOUT PREJUDICE AS MOOT**.  Plaintiff's claim for equitable relief seeking to prevent prison officials from considering the nature and circumstances of Plaintiff's crime of conviction, or circumstances surrounding that crime, or any other evidence of Plaintiff's dangerousness to prison security that arose or was considered while he was at Shawangunk, is **DENIED** and this claim is **DISMISSED**.

The Clerk of the Court is **DIRECTED** to enter an Amended Final Judgment which

dismisses all of Plaintiff's claims for injunctive relief consistent with this Decision and Order, and to close the file in this case.

**IT IS SO ORDERED**

DATED:August 8,2006

Thomas J. McAvoy
Senior, U.S. District Judge